J-S57038-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: B.G.R. A/K/A J.E., A MINOR | : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: D.R., NATURAL MOTHER | : | No. 695 MDA 2019 |

Appeal from the Decree Entered March 28, 2019
in the Court of Common Pleas of Luzerne County
Orphans' Court at No(s):  A-8798

| | | |
|---|---|---|
| IN THE INTEREST OF: C.W.E., A MINOR | : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: D.R., NATURAL MOTHER | : | No. 697 MDA 2019 |

Appeal from the Decree Entered March 28, 2019
in the Court of Common Pleas of Luzerne County
Orphans' Court at No(s):  A-8799

| | | |
|---|---|---|
| IN THE INTEREST OF: S.J.E., A MINOR | : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: D.R., NATURAL MOTHER | : | No. 699 MDA 2019 |

Appeal from the Decree Entered March 28, 2019
in the Court of Common Pleas of Luzerne County
Orphans' Court at No(s):  A-8801

BEFORE:  BOWES, J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:      **FILED: DECEMBER 27, 2019**

D.R. ("Mother") files these consolidated appeals from the Decrees[1] granting the Petition of the Luzerne County Children and Youth Services ("the Agency"), and involuntarily terminating her parental rights to her minor, dependent children, B.G.R. a/k/a J.E. ("J.E."), a female born in April 2018, C.W.E., a male born in April 2016, and S.J.E., a female born in April 2014 (collectively, the "Children"), pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (b).[2] We affirm.

C.W.E. and S.J.E. came into care on December 19, 2017, pursuant to an emergency shelter care Order, as a result of issues concerning housing, domestic violence, and drug and alcohol use relating to Mother and Father. N.T., 2/19/19, at 54-55. As reported by Agency caseworker, Denise Dessoye ("Dessoye"),

---

[1] While the docket reflects a recorded date of March 28, 2019, there is no notation on the docket that notice was given and that the Decrees were entered for purposes of Pa.R.C.P. 236(b). **See Frazier v. City of Philadelphia**, 735 A.2d 113, 115 (Pa. 1999) (holding that "an order is not appealable until it is entered on the docket with the required notation that appropriate notice has been given"); **see also** Pa.R.A.P. 108(a) (entry of an order is designated as "the day on which the clerk makes the notation in the docket that notice of entry of the order has been given as required by Pa.R.C.P. 236(b)."). Thus, the Decrees were not entered and the appeal period not triggered. Although we consider the matter on the merits, we caution the Court of Common Pleas of Luzerne County as to compliance with the rules regarding the entry of orders.

[2] By separate Decrees entered the same date, the Orphans' Court involuntarily terminated the parental rights of the Children's father, D.E. ("Father"). Father has filed separate appeals with this Court, which are docketed at Nos. 696, 698, 700 MDA 2019.

[the Agency] received a referral that [Mother] and [Father] were living in a hotel. They lost their housing and [C.W.E.] was injured and had to get taken to a hospital for three stitches in his head. On that same day[,] we received another referral [that] there was an article in the paper saying that [Father] was attempting to buy drugs at his dealer's house in Wilkes-Barre at 5:30 in the morning and he was severally [*sic*] beaten by his drug dealer.

*Id.* at 54. Subsequently, C.W.E. and S.J.E. were adjudicated dependent on December 29, 2017. *Id.* at 56.

J.E. came into care pursuant to emergency shelter care Order on April 12, 2018. Dessoye recounted, "[J.E.] was born [in April 2018]. [Mother and Father] did not seek any services, nor did they have any housing. [Dessoye] was unable to reach them. The hospital was reporting that they left the hospital and did not come back, so we took shelter care of the child." *Id.* at 55. Thereafter, J.E. was adjudicated dependent on April 23, 2018. *Id.* at 56-57.

On November 15, 2018, the Agency filed Petitions to involuntary terminate Mother's and Father's parental rights to the Children.[3] The Agency sought to terminate Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (b). A hearing was conducted on the termination Petitions

---

[3] The Agency filed an amended Petition as to Father on February 8, 2019.

on February 19, 2019.[4]  Mother and Father were present and represented by counsel.[5]  Neither Mother nor Father testified on their own behalf.

By Decrees entered March 28, 2019, the Orphans' Court involuntarily terminated Mother's parental rights to Children pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (b).  On April 26, 2019, Mother, through appointed counsel, filed timely Notices of Appeal, as well as Concise Statements of errors

_____

[4] While the notes of testimony from this hearing are not included as part of the certified record, they are included as part of the reproduced record.  As the veracity is not in dispute, we rely on the copy contained within the reproduced record.  **See Commonwealth v. Barnett**, 121 A.3d 534, 544 n.3 (Pa. Super. 2015) (stating that "[w]hile this Court generally may only consider facts that have been duly certified in the record, where the accuracy of a document is undisputed and contained in the reproduced record, we may consider it.") (internal citation omitted).

[5] The Children were represented by a guardian *ad litem* ("GAL"), Maria Turetsky, Esquire, during this proceeding.  Upon review, we find the requirements of 23 Pa.C.S.A. § 2313(a) satisfied.  At the time of the hearing, C.W.E. and J.E. were almost three years old and one year old, respectively, and too young to express a preference.  Further, as to S.J.E., the evidence is not suggestive of any conflict between her best interests and legal interests. **See In re Adoption of L.B.M.**, 161 A.3d 172, 175, 180 (Pa. 2017) (plurality) (stating that, pursuant to 23 Pa.C.S.A. § 2313(a), a child who is the subject of a contested involuntary termination proceeding has a statutory right to separate legal counsel who discerns and advocates for the child's legal interests, defined as a child's preferred outcome); **see also In re T.S.**, 192 A.3d 1080, 1089-90, 1092-93 (Pa. 2018) (holding that the trial court did not err in allowing the children's GAL to act as their sole representative during the termination proceeding, because, at two and three years old, they were incapable of expressing a preferred outcome).

complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b), which were consolidated *sua sponte* by this Court on July 11, 2019.[6]

On appeal, Mother raises the following issue for our review:

A. Whether the trial court erred in terminating parental rights and/or abused its discretion[,] as testimony offered did not establish by clear and convincing evidence the requirements of … 23 Pa.C.S.A. [§] 2511(a)(1) in that [Mother] has not[,] for a period of at least 6 months[,] evidenced a settled purpose of relinquishing parental claim to the [Children] or has refused or failed to perform parental duties[?]

Mother's Brief at 3 (some capitalization omitted).[7]

Mother claims that the Agency failed to produce clear and convincing evidence to terminate her parental rights under Section 2511(a)(1). *Id.* at 6. Mother asserts that she was unable to perform her parental duties because she was in prison for a period of time. *Id.* at 9-10. According to Mother, the

_____

[6] As counsel failed to file docketing statements on behalf of Mother, pursuant to the Order of June 20, 2019, the matters were remanded for a determination as to whether counsel abandoned Mother, and the taking of any further action to protect Mother's right to appeal. As reflected by Orphans' Court Order of June 27, 2019, after a hearing on June 27, 2019, the Orphans' Court received information that counsel filed the requisite docketing statements on behalf of his client.

[7] Mother waived any challenge to the sufficiency of the evidence to support the termination of her parental rights under Section 2511(b), as she did not specifically raise such a challenge in her Concise Statements or the Statement of Questions Involved portion of her brief. *See Krebs v. United Ref. Co. of Pa.*, 893 A.2d 776, 797 (Pa. Super. 2006) (holding that an appellant waives issues that are not raised in both his concise statement of errors complained of on appeal and the statement of questions involved in his brief on appeal). Nevertheless, we will discuss the sufficiency of the evidence supporting the termination of Mother's parental rights under section 2511(b), as the Orphans' Court considered the Children's best interest in its Opinion.

Agency caseworker did not contact Mother or any other member of Mother's family in order to foster a connection with Mother and Children. *Id.* at 10.

In matters involving involuntary termination of parental rights, our standard of review is as follows:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations, quotation marks and brackets omitted). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G. & J.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citation omitted). "[I]f competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa. Super. 2003) (citation omitted).

The termination of parental rights is governed by Section 2511 of the Adoption Act, and requires a bifurcated analysis of the grounds for termination, followed by the needs and welfare of the child.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted). We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*).

In this case, the Orphans' Court terminated Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (b), which provide as follows:

**(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

* * *

**(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the

- 7 -

control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

We first examine the court's termination of Mother's parental rights under Section 2511(a)(1). We have explained this Court's review of a challenge to the sufficiency of the evidence supporting the involuntary termination of a parent's rights pursuant to Section 2511(a)(1) as follows:

> To satisfy the requirements of Section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. In addition,
>
>> Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.
>>
>> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (internal citations omitted).

As it relates to the crucial six-month period prior to the filing of the petition, this Court has instructed that

> it is the six months immediately preceding the filing of the petition that is most critical to our analysis. However, the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provisions, but instead consider the individual circumstances of each case.

*In re D.J.S.*, 737 A.2d 283, 286 (Pa. Super. 1999) (citations omitted). This requires the Court to "examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination." *In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004), *appeal denied*, 872 A.2d 1200 (Pa. 2005) (citation omitted).

Further, we have stated as follows:

> [T]o be legally significant, the [post-abandonment] contact must be steady and consistent over a period of time, contribute to the psychological health of the child, and must demonstrate a serious intent on the part of the parent to recultivate a parent-child relationship and must also demonstrate a willingness and capacity to undertake the parental role. The parent wishing to reestablish his parental responsibilities bears the burden of proof on this question.

*In re Z.P.*, 994 A.2d at 1119 (citation omitted); *see also In re Adoption of C.L.G.*, 956 A.2d 999, 1006 (Pa. Super. 2008) (*en banc*).

Regarding the definition of "parental duties," this Court has stated:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs,

physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance.

This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with … her physical and emotional needs.

*In re B., N.M.*, 856 A.2d at 855 (internal citations omitted). Critically, incarceration does not relieve a parent of the obligation to perform parental duties. An incarcerated parent must "utilize available resources to continue a relationship" with his or her child. *In re Adoption of S.P.*, 328, 47 A.3d 817, 828 (Pa. 2012).

Instantly, relevant to finding grounds for termination of Mother's parental rights to the Children pursuant to subsection (a)(1), the Orphans' Court stated as follows:

The credible and uncontradicted testimony of [] Dessoye, caseworker for [the Agency], was that six months prior to the filing of the [] Petition to Terminate [Mother's] Parental Rights on November 15, 2018, Mother did not maintain any significant

- 10 -

contact with the minor [C]hildren. According to [] Dessoye, Mother's last contact with … [C.W.E.] and [S.J.E.] was on March 29, 2018[,] during a visit at the [Agency] office. Mother's last contact with [J.E.] was at the hospital [in April 2018,] on or around the child's birth.

[] Dessoye testified that six (6) months prior to the filing of the Petition to Terminate Mother's Parental rights to the three minor [C]hildren, Mother did not do the following:

1. Provide any financial support through the [A]gency or through the Department of Domestic Relations;

2. Provide any gifts for the minor [C]hildren for their birthdays or holidays or for any other reason;

3. Write any letters to the minor [C]hildren or attempt to have any telephone contact with them;

4. Provide any food, clothing, or any other necessities for the [C]hildren;

5. Involve herself in making any decisions regarding the [C]hildren's medical care or developmental needs;

6. Provide for the [C]hildren's emotional needs by nurturing or consoling the children at any time; and

7. Perform any parental duties for the [C]hildren.

The [c]ourt, therefore, finds that based upon the testimony of [] Dessoye and the evidence presented before the [c]ourt, Mother has refused or failed to perform her parental duties since the date of placement of the two minor children, [C.W.E.] and [S.J.E.], on December 19, 2017[,] and since the date of placement of the minor child, [J.E.,] on April 12, 2018.

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (i) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the

effect of termination of parental rights on the child pursuant to [] 23 Pa.C.S.A. § 2511(b). *In re: Z.S.W.*, [*supra*].

Pursuant to [23 Pa.C.S.A. §] 2511(a)(1), **the first line of inquiry** is the parent's explanation for his or her conduct. Mother did not testify on her own behalf or present the testimony of any witnesses to explain her conduct. The record was void of any explanation presented by Mother. Therefore, the court does not find any reasonable explanation for Mother's conduct.

The **second line of inquiry** is the post-abandonment contact between parent and child. It was established on the record by [] Dessoye's testimony that Mother had not had any contact with … [C.W.E.] and [S.J.E.] between March 29, 2018[,] and the filing of the termination [P]etition on November 15, 2018[,] and had not had any contact with [J.E.] between April 6, 2018[,] and the filing of the termination [P]etition on November 15, 2018. Thus, there was an excess of six months [following] last contact between Mother and the minor [C]hildren. The credible and uncontradicted testimony given by [] Dessoye confirms that there has not been any post-abandonment contact between Mother and the minor [C]hildren.

The **third line of inquiry**, as stated in *In re: Z.S.W.*[,] 946 A.2d 726 [,] requires the [c]ourt to review the evidence in support of termination under [] 23 Pa.C.S.A. [§] 2511(b). The [c]ourt must determine whether the termination of parental rights would best serve the developmental, physical and emotional needs and welfare of the child. *In re C.M.S.*, 884 A.2d 1284, 1286-87 (Pa. Super. 2005). "Intangibles such as love, comfort, security and stability are involved in the inquiry into the needs and welfare of the child." *Id.* at 1287. The court must also discern the nature and status of the parent-child bond, with utmost attention to the effect of permanently severing that bond on the child. *Id.*

[] Dessoye testified that … [S.J.E.] and [C.W.E.] were placed with the same foster family[,] and [J.E.] was placed with another foster family. All [C]hildren have been placed with their foster families since the date of placement. With respect to [S.J.E.] and [C.W.E.]'s foster parents, the foster family [already] has one adopted child who is ten (10) years old [and] another adopted child who is seven (7) years old. With respect to [J.E.]'s placement, the foster family has two children, an eight-year-old and a four-year-old. [] Dessoye testified that all three [C]hildren

are assimilated into their foster families. They participate in all family functions, birthdays, and holidays. There are pictures of the [C]hildren in the foster families' home. The [C]hildren referred to the foster [m]other and [f]ather as "Mom and Dad." [] Dessoye testified that the families are aware that[,] in the event they are permitted to adopt the [C]hildren, the [C]hildren would be able to inherit from their estate.

[] Dessoye testified that the foster parents for all three [C]hildren meet the physical needs of the [C]hildren. They provide food, housing, clothing and shelter. They also ensure that the [C]hildren attend their medical appointments. According to [] Dessoye, the foster parents also meet the [C]hildren's developmental needs. [S.J.E.] is currently in an educational program known as Head Start. The foster family also has toys, books and other activities for the [C]hildren at the residence.

[] Dessoye testified that the foster families also meet the [C]hildren's emotional needs. She stated that[,] when the [C]hildren are sick or sad, they seek comfort from the foster parents. She also testified that the [C]hildren are attached to the foster parents and that there is a very strong bond between them. She described the relationship between the foster parents and the [C]hildren as a parent[-]child relationship.

[] Dessoye testified that for the past six months[,] she had not observed any interactions between the natural Mother and the minor [C]hildren because the Mother has not had any contact with the [Agency]. [] Dessoye testified that Mother's contact with the minor [C]hildren had been sporadic throughout the placement. [] Dessoye testified that she did not believe that there was any relationship between the minor [C]hildren and [] Mother at the time of the hearing.

….

[] Dessoye testified that she did not believe that the [C]hildren would suffer any detrimental impact should the court grant the Petition[s] to terminate [Mother's and Father's parental] rights. [] Dessoye testified that she believes that the foster parents' relationship with the minor [C]hildren is stronger than [Mother's and Father's] relationship[s] with the [C]hildren. She stated that she also believes that adoption would be in the [C]hildren's best interest.

- 13 -

[] Dessoye also stated that [S.J.E.] and [C.W.E.] visit [J.E.] on a monthly basis. The two sets of foster parents have agreed to schedule opportunities for continuing contact in the event the parents' rights are terminated and the siblings are to be adopted. The foster parents would be willing to have the minor [C]hildren continue contact with the natural parents as long as the natural parents remain clean from illegal substances or alcohol. [] Dessoye testified that both sets of foster parents for the minor [C]hildren are willing to be permanent resources for the minor [C]hildren and wish to adopt them.

Orphans' Court Opinion, 6/19/19, at 7-12 (citations to record omitted) (emphasis in original).

Further, as to incarceration, the Orphans' Court stated as follows:

[] Dessoye testified that Mother was incarcerated from October 2018 to January 2019. Therefore, Mother was incarcerated one month prior to the filing of the Involuntary [Termination] Petition of Mother's parental rights on November 15, 2018. [] Dessoye testified that while Mother was incarcerated, Mother did not make any contact with her to set up any visits with the [C]hildren.

….

[B]oth Mother and Father, in the case at bar, did not utilize their resources while in prison to pursue a close relationship with their minor [C]hildren. Mother did not make any contact with [] Dessoye to set up any visits with the [C]hildren….

[B]oth Mother and Father … did not exert themselves whatsoever, nor did they utilize resources to maintain a place of importance in their [C]hildren's lives. The [c]ourt finds that Mother and Father have refused or failed to perform any parental duties since the date of placement of their [C]hildren.

*Id.* at 22-23, 24-25 (citation to record omitted).

Upon review, we discern no abuse of discretion and do not disturb the

Orphans' Court's findings and determinations, as they are supported by

- 14 -

competent, clear and convincing evidence in the record. *See In re T.S.M.*, 71 A.3d at 267; *In re Adoption of T.B.B.,* 835 A.2d at 394.[8] Thus, termination pursuant to Section 2511(a)(1) was proper.

We next turn to whether termination was proper under Section 2511(b). As to this section, our Supreme Court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.[A.] § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791. However, … evaluation of a child's bonds is not always an easy task.

*In re T.S.M.*, 71 A.3d at 267. "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the

_____

[8] Further, to the extent that Mother's argument may be read to include an assertion of a lack of reasonable efforts on the part of the Agency, this argument is without merit. Our Supreme Court has rejected the argument that the provision of reasonable efforts by the county children's services agency is a factor in termination of the parental rights of a parent to a child. *See In the Interest of: D.C.D.*, 105 A.3d 662, 673-74, 676 (Pa. 2014) (explaining that although a court may consider the "provision or absence of reasonable efforts," the Adoption Act does not require a court "to consider the reasonable efforts provided to a parent prior to termination of parental rights.").

circumstances of the particular case." ***In re K.Z.S.***, 946 A.2d 753, 762-63 (Pa. Super. 2008) (citation omitted).

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." ***In re Z.P.***, 994 A.2d at 1121 (internal citations omitted).

Moreover,

> While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
>> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent….

***In re Adoption of C.D.R.***, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quotation marks and citations omitted).

The Orphans' Court also considered the Children's best interests under Section 2511(b), finding

> that [] Mother and Father cannot meet the [C]hildren's physical, developmental and emotional needs. Mother and Father have been given ample time to address and remedy their problems, but have failed to successfully do so. In stark contrast, the foster parents have amply demonstrated that they meet the physical, developmental and emotional needs of the minor [C]hildren, … and the [C]hildren have thrived under their care. The [C]hildren need consistency and deserve a permanent home with loving[,] capable parents. The only way to provide this is to terminate the rights of [] Mother and Father. Clearly, it is in the [C]hildren's best interest to do so.

Orphans' Court Opinion, 6/19/19, at 26; *see also id.* at 25-26 (wherein the Orphans' Court referenced the reasoning it set forth regarding Section 2511(a)(1), and concluding that the same considerations apply to the best interest analysis).

Upon review, we discern no abuse of discretion. The record supports the Orphans' Court's finding that the Children's developmental, physical and emotional needs and welfare favor termination of Mother's parental rights pursuant to Section 2511(b). *See T.S.M.*, 71 A.3d at 267. There was sufficient evidence to allow the Orphans' Court to make a determination of the Children's needs and welfare, and as to the lack of a bond between Mother and the Children such that, if severed, would have a detrimental impact on them.

While Mother may profess to love the Children, a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights. *In re Z.P.*, 994 A.2d at 1121. At the time of the hearing, C.W.E. and S.J.E. had been in care approximately fourteen months, and J.E. had been in care approximately ten months. The Children are entitled to permanency and stability. As we have repeatedly stated, a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *Id.* at 1125. Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper

parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." ***In re B., N.M.***, 856 A.2d at 856 (citation omitted).

Accordingly, based upon our review of the record, we find no abuse of discretion, and conclude that the Orphans' Court appropriately terminated Mother's parental rights under 23 Pa.C.S.A. § 2511(a)(1) and (b).

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/27/2019